CLERK'S OFFICE U.S. DISTRICT COURT AT
ROANOKE, VA
FILED
2/11/2025
LAURA A. AUSTIN, CLERK
BY: s/C. Kemp
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| PEGGY H., | ) |
| Plaintiff, | ) Civil Action No. 7:24-cv-00043 |
| v. | ) **MEMORANDUM OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | ) By:  Hon. Thomas T. Cullen |
|  | ) United States District Judge |
| Defendant. | ) |

Plaintiff Peggy H. ("Peggy") filed suit in this court seeking review of the Commissioner of Social Security's ("Commissioner") final decision denying her claim for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381–1385. Peggy suffers from various disorders, but this appeal concerns only her hand problems, cervical radiculopathy, and mild carpal tunnel syndrome. On review of her application for SSI, an administrative law judge ("ALJ") concluded that despite her limitations, Peggy could still perform a range of light work with additional modifications. Peggy challenges that conclusion, requesting remand for further administrative proceedings. After a thorough review of the record, the court concludes that the ALJ failed to adequately explain her reasoning regarding the RFC finding as it relates to Peggy's hand problems. Accordingly, because that analytical omission frustrates the court's review, the court will remand this matter for further administrative proceedings consistent with this opinion.

## I.    STANDARD OF REVIEW

The Social Security Act (the "Act") authorizes this court to review the Commissioner's final decision that a person is not entitled to disability benefits. 42 U.S.C. § 405(g); *see also Hines*

*v. Barnhart*, 453 F.3d 559, 561 (4th Cir. 2006). The court's role, however, is limited; it may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment" for that of agency officials. *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted). Instead, the court, in reviewing the merits of the Commissioner's final decision, asks only whether the ALJ applied the correct legal standards and whether "substantial evidence" supports the ALJ's findings. *Meyer v. Astrue*, 662 F.3d 700, 704 (4th Cir. 2011); *see Riley v. Apfel*, 88 F. Supp. 2d 572, 576 (W.D. Va. 2000).

In this context, "substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation omitted). It is "more than a mere scintilla" of evidence, *id.* (internal quotation omitted), but not "a large or considerable amount of evidence," *Pierce v. Underwood*, 487 U.S. 552, 565 (1988). Substantial evidence review considers the entire record, not just the evidence cited by the ALJ. *See Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487–89 (1951); *Gordon v. Schweiker*, 725 F.2d 231, 236 (4th Cir. 1984). Ultimately, this court must affirm the ALJ's factual findings if "conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled." *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (per curiam) (internal quotation omitted). But "[a] factual finding by the ALJ is not binding if it was reached by means of an improper standard or misapplication of the law." *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987).

A person is "disabled" within the meaning of the Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Social Security ALJs follow a five-step process to determine whether a claimant is disabled. The ALJ asks, in sequence, whether the claimant (1) has been working; (2) has a severe impairment that satisfies the Act's duration requirement; (3) has an impairment that meets or equals an impairment listed in the Act's regulations; (4) can return to past relevant work (if any) based on his residual functional capacity ("RFC"); and, if not, (5) whether he can perform other work. *See Heckler v. Campbell*, 461 U.S. 458, 460–62 (1983); *Lewis v. Berryhill*, 858 F.3d 858, 861 (4th Cir. 2017); 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through step four. *Lewis*, 858 F.3d at 861. At step five, the burden shifts to the agency to prove that the claimant is not disabled. *See id.*

## II. PROCEDURAL HISTORY AND RELEVANT EVIDENCE

Peggy filed three prior social security applications on April 19, 2011; March 16, 2015; and January 2, 2018. (R. 11 [ECF No. 7-1].) Those claims were denied, and Peggy did not pursue them further. (*Id.*)

Peggy filed the present application for SSI on November 10, 2021, initially alleging disability beginning on January 1, 2009.[1] (R. 93.) She alleged disability due to various conditions including hand problems, bad nerves, and cervical radiculopathy. (*Id.*) Her application was denied initially and upon reconsideration. (R. 93–99, 117–33.) Peggy requested a hearing on her claim, and on May 18, 2023, she appeared telephonically with her attorney before ALJ Sandra Morales Price. (R. 42–60.) During the hearing, she amended her disability onset date

---

[1] Peggy initially sought disability insurance benefits ("DIB") in addition to SSI, but she constructively waived the DIB claim at her hearing before the ALJ on May 18, 2023, and the application proceeded only as to her request for SSI. (R. 11–12; Pl.'s Br. at 1–2 [ECF No. 12].) This appeal concerns only her application for SSI.

to November 10, 2021, the date on which she filed her application for SSI. (R. 48.) On June 30, 2023, the ALJ issued a written decision finding that Peggy was not disabled during the relevant period and denied her claim. (R. 11–22.) The Appeals Council denied Peggy's request to review that decision (R. 1), and Peggy filed suit in this court on January 15, 2024 (Compl. [ECF No. 2]).

### A. Legal Framework

A claimant's RFC is her "maximum remaining ability to do sustained work activities in an ordinary work setting" for eight hours a day, five days a week despite her medical impairments and related symptoms. SSR 96-8p, 1996 WL 374184, at *2 (July 2, 1996) (emphasis omitted). The ALJ determines the claimant's RFC between steps three and four of the five-step disability determination. *See Patterson v. Comm'r of Soc. Sec. Admin.,* 846 F.3d 656, 659 (4th Cir. 2017) (citing 20 C.F.R. § 404.1520(e)). "This RFC assessment is a holistic and fact-specific evaluation; the ALJ cannot conduct it properly without reaching detailed conclusions at step 2 concerning the type and [functional] severity of the claimant's impairments." *Id.*

The Commissioner "has specified the manner in which an ALJ should assess a claimant's RFC." *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). First, because RFC is "a function-by-function assessment based upon all of the relevant evidence of [the claimant's] ability to do work related activities," SSR 96-8p, 1996 WL 374184, at *3, the ALJ must identify each impairment-related functional restriction that is supported by the record, *see Monroe v. Colvin*, 826 F.3d 176, 179 (4th Cir. 2016). The RFC should reflect credibly established "restrictions caused by medical impairments and their related symptoms"—including those

that the ALJ found "non-severe"—that impact the claimant's "capacity to do work-related physical and mental activities" on a regular and continuing basis. SSR 96-8p, 1996 WL 374184, at *1, *2.

Second, the RFC assessment must include a "narrative discussion describing" how specific medical facts and non-medical evidence "support[] each conclusion," SSR 96-8p, 1996 WL 374184, at *7, and must logically explain how the ALJ weighed any inconsistent or contradictory evidence in arriving at those conclusions, *Thomas*, 916 F.3d at 311–12. Generally, a reviewing court will affirm the ALJ's RFC findings when he considered all the relevant evidence under the correct legal standards, and the written decision built an "accurate and logical bridge from the evidence to his [or her] conclusion[s]." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000); *see Brown v. Comm'r of Soc. Sec. Admin.*, 873 F.3d 251, 268–72 (4th Cir. 2017); *Shinaberry v. Saul*, 952 F.3d 113, 123–24 (4th Cir. 2020); *Thomas*, 916 F.3d at 311–12; *Patterson*, 846 F.3d at 662–63.

### B. Treatment Records[2]

On August 23, 2021—a few months before her alleged disability onset date—Peggy presented to Meagan Crowder, NP, for hand numbness and pain. (R. 986.) Peggy told Ms. Crowder that she "has been dropping things," "her hands swell up at times," and she has "numbness and tingling in all 5 digits." (R. 988.) She reported experiencing joint pain and numbness. (*Id.*) Ms. Crowder performed a Phalen's test, which was positive.[3] (R. 989.) Ms.

---

[2] Because Peggy's only argument in this case concerns her hand problems and related impairments, the court sets forth only the evidence relevant to that argument.

[3] Phalen's test is used to diagnose carpal tunnel syndrome, *see* https://my.clevelandclinic.org/health/diagnostics/25133-phalens-test.

Crowder diagnosed Peggy with cervical radiculopathy and bilateral carpal tunnel syndrome. (*Id.*) Ms. Crowder also referred Peggy to Dr. Rollin Hawley for a neurology consultation relating to those two impairments. (R. 981, 989.)

When Peggy presented to Dr. Hawley in October 2021, she had "a positive right Tinel's sign over the right median at the wrist, producing local tingling; positive right reverse Phalen's sign, producing right thenar burning and stinging pain; positive left Tinel's sign over the median nerve at the wrist, producing local pain; positive left Phalen's and reverse Phalen's sign, both producing left thenar pain; with pressure on her left ulnar nerve with the elbow producing local tingling;" and "a right middle trigger finger."[4] (R. 981.) Peggy also reported to Dr. Hawley that "she cannot open cans with her hands, and drops pots with them." (R. 982.) Dr. Hawley also conducted nerve conduction studies and electromyography ("EMG"). (*Id.*) Based on his exam and these tests, he diagnosed Peggy with mild bilateral sensory carpal tunnel syndrome, to which he ascribed most of her symptoms in her hands, and chronic bilateral C7 cervical radiculopathy. (*Id.*) For the carpal tunnel syndrome, he suggested she continue "to wear her carpal tunnel wrist splints at night or when tempted to flex or extend her wrists"; if that was insufficient, he noted that, "at some point she may require carpal tunnel injections or surgical releases." (*Id.*)

On November 2, 2021, Peggy presented to Dr. John Mayer, an orthopedic surgeon, for a consultation and evaluation of her hand numbness and pain. (R. 976.) On exam, Dr. Mayer observed no "evidence of atrophy," but recorded Peggy's "[s]ubjective numbness in

---

[4] Testing for Tinel's sign assesses for nerve damage or nerve irritation, *see* https://my.clevelandclinic.org/health/diagnostics/22662-tinels-sign.

variable fingers" and "right long finger trigger digit." (R. 979.) He diagnosed her with cervical radiculopathy and acquired trigger finger of the right middle finger. (*Id.*) For the latter, he administered an injection into the finger. (*Id.*)

Two days later, Peggy presented for a neurosurgery consult to Dr. Vaibhav Patel, complaining of neck pain radiating into her right arm and numbness/tingling in both hands. (R. 740.) Dr. Patel diagnosed her with cervical radiculopathy and ordered an MRI and spinal x-rays. (R. 744.) Peggy saw Dr. Patel for a follow-up, reporting the same symptoms, on February 3, 2022. (R. 732.) At that appointment, Dr. Patel also reviewed her x-rays and MRI. (R. 735.) These showed pseudoarthrosis, arthrosis, and effusion. (*Id.*)

Peggy presented to Dr. William Bess, Jr. for routine exams on April 6, May 11, and December 19, 2022, which were unremarkable. (R. 962–72, 999–1005.)

### C. Opinion Evidence

On initial review of Peggy's application for SSI on March 23, 2022, Dr. Daniel Camden reviewed Peggy's records and performed an RFC assessment. (R. 85–91.) When Dr. Camden examined her, Peggy reported that she had excruciating pain in her hands. (R. 86.) Dr. Camden opined that Peggy could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and sit, stand, and walk about 6 hours in an 8-hour workday. (R. 88.) He also found that she could climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl only occasionally. (*Id.*) Finally, he thought she should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards such as machinery and heights. (R. 89.) He concluded that she could perform light work with these limitations. (*Id.*)

On reconsideration of Peggy's claim on August 13, 2022, Dr. Michael Koch reviewed

the updated medical evidence. (R. 102–14.) Dr. Koch referenced Dr. Hawley's diagnosis of "bilateral sensory carpal tunnel syndromes causing most distal symptoms and chronic bilateral C7 cervical radiculopathy." (R. 107.) Dr. Koch found the same functional limitations as Dr. Camden and likewise concluded that she could perform light work with those limitations. (R. 111–12.)

### D. Relevant Testimony

At the May 18, 2023 hearing before the ALJ, Peggy testified about her medical history, symptoms, and limitations. Peggy testified that she had rheumatoid arthritis in her hands and could not "pick stuff up because [she] drop[s] it. [Her] hands just let go of it." (R. 53.) She also could not reach above her head. (*Id.*) Although she used to crochet, she could no longer do so because of her hands. (R. 54.)

### E. The ALJ's Opinion

In a written opinion, the ALJ determined that Peggy suffered from cervical facet arthrosis, cervical radiculopathy, depression, and anxiety, all of which qualified as severe impairments. (R. 14.) In addition, the ALJ found that Peggy suffered from non-severe mixed hyperlipidemia, emphysema, fibromyalgia, headaches, and rheumatoid arthritis. (*Id.*) Peggy's impairments—either alone or combined—did not meet or medically equal the severity of one of the listed impairments in the applicable regulations. (R. 15.) "After careful consideration of the entire record," the ALJ found that Peggy had the RFC

> to perform light work as defined in 20 CFR 416.967(b) except for occasionally push/pull with upper extremities. She can frequently reach overhead and in any other direction. The claimant can never climb ladders/ropes/scaffolds, and occasionally climb ramps and stairs, balance, kneel, stoop, crouch and crawl. She can have no exposure to heights, and occasional exposure to

> machinery, vibration, wetness, and extreme cold. The claimant can perform simple, routine tasks; and make simple work-related decisions. She can have frequent contact with the public, supervisors, and co-workers.

(R. 17.) As a result, the ALJ found that a significant number of jobs exist in the national economy that Peggy can perform (such as retail marker, small parts assembler, and cashier), and that Peggy was not disabled within the meaning of the regulations from her amended disability onset date of November 10, 2021, through the date of the decision. (R. 21.)

### III.  ANALYSIS

Peggy argues that the court should remand her case for further administrative proceedings because the ALJ failed to adequately explain why the evidence of Peggy's hand problems did not support an additional RFC limitation for handling and grasping objects. The court agrees. (*See generally* Pl.'s Br. [ECF No. 12].)

"A necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013). Here, the court cannot engage in substantial evidence review with respect to the ALJ's conclusions about Peggy's hand problems because the ALJ did not provide any explanation whatsoever concerning that impairment. Instead, the court is "left to guess about how the ALJ arrived at [her] conclusions." *Mascio v. Colvin*, 780 F.3d 632, 637 (4th Cir. 2015).

The ALJ concluded that "the medical evidence during the current period does not show that the claimant has had any limitations with the use of her right hand" (R. 20), and summarily asserted that Peggy's radiculopathy and mild carpal tunnel syndrome "are accounted for in the above residual functional capacity" (R. 19). But the ALJ never explained why the medical evidence—which includes diagnoses of C7 cervical radiculopathy, bilateral

carpal tunnel syndrome, and reports of the same symptoms to which Peggy testified at the hearing—does not warrant any hand-related limitations.

The ALJ recounted Peggy's testimony and the relevant evidence but jumped immediately from that factual recitation to the conclusion and summary assertion that the listed RFC "accounts for" the evidence. (R. 19.) The ALJ did not build an "accurate and logical bridge from the evidence to [her] conclusion," *Clifford*, 227 F.3d at 872, and without such a bridge, the court cannot ascertain how an RFC with no hand-related limitations "accounts for" mild carpal tunnel syndrome. Without even a sentence of explanation from the ALJ, the court is "left to guess" at how the ALJ analyzed the evidence. *See Mascio*, 780 F.3d at 637.

Further, in his letter summarizing his neurology consult, Dr. Hawley opined that carpal tunnel syndrome causes most of the symptoms in Peggy's hands. (R. 982.) Dr. Mayer reviewed the same EMG tests on which Dr. Hawley relied but disagreed with Dr. Hawley's diagnoses and noted that the EMG test "suggests actually C7 cervical radiculopathy." (R. 978.) The court cannot discern how the ALJ weighed the two directly conflicting opinions, however, because the ALJ did not discuss how it weighed the evidence of that impairment. *See Radford*, 734 F.3d at 295 ("The record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence."). Again, the court is "left to guess" at the ALJ's reasoning. *See Mascio*, 780 F.3d at 637.

The ALJ did note that "examinations show claimant has no atrophy of the hands, no muscle weakness, no swelling, no joint pain, no numbness, and no stiffness." (R. 19.) Presumably, these examinations justify the ALJ's decision not to impose hand-related limitations in the RFC. But even that recitation contradicts the medical evidence that the ALJ

cites in support, namely the treatment records from Peggy's consult with Dr. Mayer, whom she saw for "bilateral hand pain *and numbness*." (R. 1046 (emphasis added).) Again, without even a modicum of analysis, the court cannot square the evidence with the ALJ's conclusion.

"[T]he ALJ's logical explanation[] is just as important" to the court's review as the medical evidence and the ALJ's conclusion. *Thomas v. Berryhill*, 916 F.3d 307, 311 (4th Cir. 2019). "[M]eaningful review is frustrated when an ALJ goes straight from listing evidence to stating a conclusion." *Id.* That is just what the ALJ did here. Because the ALJ's analytical omissions frustrate the court's review, the court will remand this case for further administrative proceedings.

## IV.    CONCLUSION

For the foregoing reasons, the ALJ failed to provide a reasoned explanation, which frustrates the court's review. Accordingly, this case is remanded to the Commissioner for further proceedings consistent with this opinion. *See* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing.").

The clerk is directed to forward a copy of this Memorandum Opinion and the accompanying Order to all counsel of record.

**ENTERED** this 11th day of February, 2025.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE